1
CYNTHIA A. RICKETTS (AZ Bar No. 012668)
Email: cricketts@srclaw.com
2
**SACKS, RICKETTS & CASE LLP**
2800 North Central Avenue, Suite 1230
3
Phoenix, AZ 85004
Telephone: 602.385.3370
4
Fax: 602.385.3371

5
Attorneys for Plaintiff
Massage Envy Franchising, LLC
6

7

8                          **UNITED STATES DISTRICT COURT**
9                             **DISTRICT OF ARIZONA**
10

| | |
|---|---|
| Massage Envy Franchising, LLC, | No. |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| Doc Marketing, LLC and George Lohmann, Jr., | |
| Defendants. | |

Plaintiff Massage Envy Franchising, LLC, for causes of action against Defendants Doc Marketing, LLC and George Lohmann, Jr. (collectively and individually, "Lohmann"), alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiff Massage Envy Franchising, LLC ("MEF") is an Arizona corporation with a principal place of business in Scottsdale, Arizona.

2.      Defendant Doc Marketing, LLC ("Doc Marketing") is a Texas limited liability company.

3.      Defendant George Lohmann, Jr. is Doc Marketing's managing member.

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between MEF and Lohmann, and because the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over the parties because MEF maintains its principal place of business in this District and many of the acts and transactions giving rise to this action occurred in this District.

6.      Venue is proper under 28 U.S.C. § 1391.  A substantial portion of the activities giving rise to MEF's claims have taken place in this District.

**FACTS**

**The Parties' Relationship**

7.      MEF is a franchisor of independently owned and operated massage therapy clinics and spas which operate under the Massage Envy® name across the United States.

8.      Lohmann and MEF's predecessor in interest Massage Envy Limited, LLC entered into two franchise agreements for clinics in Texas, dated July 7, 2007.  As relevant to this Complaint, one of the clinics is named the Joe Battle Clinic and is located in El Paso, Texas.

9.      As part of each franchise agreement, Lohmann also signed as a guarantor for Doc Marketing a Guaranty and Assumption of Obligations ("Guaranty").  Under the Guaranty, Lohmann agreed to be bound by all agreements between Lohmann and MEF.

10.      On or about June 3, 2014, MEF terminated the franchise agreements between MEF and Lohmann, but offered Lohmann the opportunity to sell the clinics.

**The Settlement Agreement**

11.      Following MEF's termination of the franchise agreements, Lohmann filed, but did not serve, a complaint in the Western District of Texas, alleging that the termination was wrongful.  MEF and Lohmann subsequently resolved their dispute and entered into a Settlement Agreement ("Agreement"), dated December 24, 2014.

12.     Under the Agreement, Lohmann and MEF agreed that MEF (or its designee) would manage the clinics until they were sold. *Id.*, § 2.1.  MEF (through its designee) has managed the clinics since on or about December 24, 2014.

13.     The Agreement also contains an appraisal process under which the clinics would be valued for purposes of sale to a third party. *Id.*, § 3.1.

14.     Pursuant to the agreed-upon process, Lohmann had the right to designate an appraiser to value the clinics. *Id.*  MEF had the right to either accept the valuation offered by Lohmann's appraiser or to request the commission of a third-party independent appraiser. *Id.*, § 3.5.

15.     The third-party appraiser is required to establish a fair market value range for each of the clinics (the "Established FMV Range"). *Id.*, § 3.5.

16.     The Agreement permits Lohmann to negotiate with prospective purchasers. *Id.*, § 3.8.

17.     However, Lohmann is required to accept any offer that falls within the Established FMV Range for a particular clinic. *Id.*, § 3.8.

18.     Under the Agreement, Lohmann expressly agreed that he would comply with all obligations of the franchise agreements, which includes the Guaranty. *Id.*, §§ 2.5, 5.1, 6.2.

19.     The Agreement is governed by Arizona law. *Id.*, § 9.5.

**Lohmann's Breach of the Agreement**

20.     Lohmann designated an appraiser to value the clinics.

21.     Following this designation, as permitted under Section 3.5 of the Agreement, MEF requested the commission of a third-party independent appraisal and paid one-half of the appraiser's fee.

22.     The third-party appraiser determined an Established FMV Range for the Joe Battle Clinic.

23.     At some point in the summer of 2015, MEF received an offer from another MEF franchisee to buy the Joe Battle Clinic for $10,000 below the Established

FMV Range.  Because the prospective buyer's offer was below the Established FMV Range, MEF communicated to Lohmann that it would agree to waive $10,000 of the $23,333 transfer fee to bring the offer within the Established FMV Range.  MEF also encouraged Lohmann to make a counteroffer to the prospective buyer.

24.   Lohmann thereafter made a counteroffer at the top-end of the Established FMV Range to the prospective buyer.  As a part of that counteroffer, Lohmann also demanded that the prospective buyer pay the $23,333 transfer fee (even though MEF had already agreed to waive $10,000 of this $23,333 transfer fee).

25.   Lohmann's counteroffer was effectively $23,333 above the Established FMV Range.

26.   The counteroffer violated Section 3.8 of the Agreement because it exceeded the Established FMV Range.

27.   Nevertheless, MEF agreed to waive the entire $23,333 transfer fee to bring the counteroffer within the Established FMV Range and that counteroffer was communicated to the prospective buyer.

28.   The prospective buyer rejected Lohmann's counteroffer, but increased his initial offer by $10,000, which brought the offer within the Established FMV Range.

29.   Even so, MEF again agreed to waive the $23,333 transfer fee, which made the prospective buyer's second offer to Lohmann effectively $23,333 above the low-end of the Established FMV Range (the "Pending Offer").  The prospective buyer conditioned his second offer (i.e., the Pending Offer) on the sale closing by November 1, 2015.

30.   MEF encouraged Lohmann to make another counteroffer, as permitted under Section 3.8 of the Agreement, but Lohmann refused.

31.   MEF is not aware of any other prospective buyer making an offer to buy the Joe Battle Clinic or even expressing an interest in doing so.

32.   MEF has performed any and all of its obligations under the Agreement.

33.     Because the current Pending Offer to buy the Joe Battle Clinic is within the Established FMV Range under the Agreement, Lohmann is required to accept it.

34.     Lohmann has refused to accept the Pending Offer in breach of the Agreement.

35.     Moreover, despite knowing that time is of the essence to accept the Pending Offer, and that this is the only offer and prospective buyer for the Joe Battle Clinic, Lohmann has wrongfully delayed sale of the Joe Battle Clinic to MEF's detriment.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

36.     MEF repeats and re-alleges each and every allegation contained in the above Paragraphs, as if fully set forth herein.

37.     The Agreement is valid, binding, and enforceable against Lohmann.

38.     MEF has performed any and all of its obligations under the Agreement.

39.     Lohmann has breached Section 3.8 of the Agreement by not accepting the Pending Offer, which is an offer $23,333 above the low-end of the Established FMV Range when combined with MEF's agreement to waive the $23,333 franchise fee, to purchase the Joe Battle Clinic.

40.     Because Lohmann has wrongfully refused to honor its obligations under the Agreement, MEF is entitled to a specific performance and/or injunctive relief order directing Lohmann to immediately perform its obligations and duties under the Agreement, including accepting the Pending Offer to purchase the Joe Battle Clinic so that the sale may close by November 1, 2015.

41.     If Lohmann continues to refuse and/or is not ordered to specifically perform its obligations under the Agreement, MEF will suffer and continue to suffer irreparable harm and injury, including being forced to operate the Joe Battle Clinic indefinitely.

42.     In addition to the requested specific performance and/or injunctive relief, MEF is further entitled to monetary damages to be determined as a direct result of Lohmann's breach of the Agreement, including costs MEF has and will continue to incur in operating the Joe Battle Clinic.

## SECOND CAUSE OF ACTION

### (Anticipatory Breach of Contract)

43.     MEF repeats and re-alleges each and every allegation contained in the above Paragraphs, as if fully set forth herein.

44.     The Agreement is valid, binding, and enforceable against Lohmann.

45.     Lohmann has stated and/or shown a clear intent not to perform under Section 3.8 of the Agreement as promised by not accepting the Pending Offer, which is essentially an offer $23,333 above the low-end of the Established FMV Range when combined with MEF's agreement to waive the $23,333 transfer fee, to purchase the Joe Battle Clinic.

46.     MEF has performed any and all obligations due and owing under the Agreement and is ready, willing, and has offered to perform any additional obligations that may be due and owing under the Agreement but Lohmann has refused to perform.

47.     Because Lohmann has wrongfully refused to honor its obligations under the Agreement, MEF is entitled to a specific performance and/or injunctive relief order directing Lohmann to perform its obligations and duties under the Agreement, including immediately accepting the Pending Offer to purchase the Joe Battle Clinic so that the sale may close before November 1, 2015.

48.     If Lohmann continues to refuse and/or is not ordered to specifically perform its obligations under the Agreement, MEF will suffer and continue to suffer irreparable harm and injury, including being forced to operate the Joe Battle Clinic indefinitely.

49.     In addition to the requested specific performance and/or injunctive relief, MEF is further entitled to monetary damages to be determined as a direct result of

Lohmann's anticipatory breach of the Agreement, including costs MEF has and will continue to incur in operating the Joe Battle Clinic.

## THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

50.    MEF repeats and re-alleges each and every allegation contained in the above Paragraphs, as if fully set forth herein.

51.    Lohmann's conduct described herein, including unreasonably delaying the sale of the Joe Battle Clinic, violates its duty to perform its contractual obligations under the Agreement in good faith.

52.    Because Lohmann has refused to act in good faith under the Agreement, MEF is entitled to a specific performance and/or injunctive relief order against Lohmann requiring it to immediately perform its obligations and duties under the Agreement, including accepting the Pending Offer to purchase the Joe Battle Clinic so that the sale may close before November 1, 2015.

53.    If Lohmann continues to refuse and/or is not ordered to specifically perform its obligations under the Agreement, MEF will suffer and continue to suffer irreparable harm and injury, including being forced to operate the Joe Battle Clinic indefinitely.

54.    In addition to the requested specific performance and/or injunctive relief, MEF is further entitled to monetary damages in an amount to be determined for the damages caused by Lohmann's breach of the implied covenant of good faith and fair dealing, including costs MEF has and will continue to incur in operating the Joe Battle Clinic.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

55.    MEF repeats and re-alleges each and every allegation contained in the above Paragraphs, as if fully set forth herein.

56.     There presently exists a controversy between MEF, on the one hand, and Lohmann, on the other hand, regarding their respective rights and obligations under the Agreement.

57.     In particular, MEF contends that the Established FMV Range is valid and that it properly followed the appraisal and sale process set forth in the Agreement and that, under the Agreement, Lohmann is required to accept the Pending Offer to purchase the Joe Battle Clinic to allow the sale of the clinic to close by November 1, 2015. Lohmann claims that the appraisal determining the Established FMV Range is invalid and that MEF did not properly follow the appraisal and sale process set forth in the Agreement and denies that it is required to accept the Pending Offer to purchase the Joe Battle Clinic.

58.     Accordingly, MEF seeks a declaration from this Court under A.R.S. § 12-1831, *et seq.* that the appraisal determining the Established FMV Range is valid, that MEF properly followed the appraisal and sale process set forth in the Agreement, and that Lohmann is required to immediately accept the Pending Offer to purchase the Joe Battle Clinic and allow the sale to close before November 1, 2015.

## PRAYER FOR RELIEF

**WHEREFORE**, MEF respectfully requests the following relief:

A.     A declaration that the appraisal determining the Established FMV Range is valid and that MEF properly followed the appraisal and sale process set forth in the Agreement;

B.     An order requiring that Lohmann specifically perform all of its obligations under the Agreement, including without limitation, that Lohmann honor its obligation to accept the Pending Offer to purchase the Joe Battle Clinic (which is an offer $23,333 above the low-end of the Established FMV Range when combined with MEF's offer to waive the $23,333 transfer fee) and allow the sale to close by November 1, 2015;

C.     An order temporarily, preliminarily, and permanently granting injunctive relief against Lohmann requiring it to immediately accept the Pending Offer to purchase the Joe Battle Clinic;

D.     Judgment for all damages caused by Lohmann's breach and/or anticipatory breach of the Agreement in amounts to be proven at trial;

E.     Judgment for reasonable attorneys' fees and costs under the Agreement, A.R.S. § 12-341.01(A) and any other applicable statute;

F.     Pre-judgment and post-judgment interest on all judgment amounts;

G.     Leave to amend this Complaint to conform to evidence later discovered, pled, or offered; and

H.     Such other and further relief as the Court deems proper and just.

DATED this 22nd day of October, 2015.

*s/Cynthia A. Ricketts*
CYNTHIA A. RICKETTS (AZ Bar No. 012668)
Email: cricketts@srclaw.com
**SACKS, RICKETTS & CASE LLP**
2800 North Central Avenue, Suite 1230
Phoenix, AZ 85004
Telephone: 602.385.3370
Fax: 602.385.3371

Attorneys for Plaintiff
Massage Envy Franchising, LLC

1

## **VERIFICATION**

2       I, Melanie Hansen, am the General Counsel of Massage Envy Franchising, LLC

3    ("MEF"), and I have authority to make this Verification on MEF's behalf.  I have read

4    the foregoing Verified Complaint and declare under penalty of perjury of the United

5    States of America that the foregoing facts are correct and true to the best of my

6    knowledge and belief.

7

8       Executed on _10/22/15_                   
Melanie Hansen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28